IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:19-CR-125-FL-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | |
| JAMES EDWARD WHITE, | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. (DE 40). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion be denied. (DE 65). Defendant timely filed objections pro se and through counsel. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is denied.

**STATEMENT OF THE CASE**

Superseding indictment filed January 29, 2020, charges defendant with distribution of a quantity of heroin (counts one through four), possession with the intent to distribute a quantity of heroin (count five), felon in possession of a firearm (count six), and possession of a firearm in furtherance of a drug trafficking crime (count seven).

Defendant filed the instant motion on September 28, 2020, seeking suppression and exclusion of all evidence obtained June 20, 2019, pursuant to a warrant authorizing search of a residence at 2460 Confederate Drive, Wilmington, North Carolina ("the residence"), allegedly in

violation of the Fourth Amendment to the United States Constitution. The government responded in opposition, on November 10, 2020, relying upon a search warrant issued June 19, 2019, in New Hanover County Superior Court (the "search warrant").[1]

The magistrate judge held a hearing on the instant motion on March 15, 2021, at which the parties made arguments and the government filed an unredacted copy of the search warrant. M&R entered on March 17, 2021, and defendant filed pro se objections on March 25, 2021, and March 29, 2021. Counsel filed objections on April 1, 2021.

## STATEMENT OF FACTS

The court incorporates herein for ease of reference the facts set forth in the M&R.

> In May 2019, a confidential source told the Wilmington Police Department that White was selling heroin in Wilmington. Search Warrant Aff. ¶ 16, D.E. 49–1–. The source also told Detective Moon of the Wilmington Police Department that White drove a blue Chevrolet Tahoe. Id. As part of his investigation, Moon arranged for the source to buy heroin from White four times.
>
> During the first controlled purchase, which occurred in mid-May 2019, White met the source at a predetermined location in a blue Chevrolet Tahoe and sold the source heroin. Id. ¶ 18. After this controlled purchase, another officer saw a vehicle that he believed to be the Tahoe from the controlled purchase at 137 Lullwater Drive in Wilmington. Id. ¶ 19. A database search for the Tahoe's license plate revealed that Donnishia Abraham was the Tahoe's registered owner. Id. And the search also revealed that 137 Lullwater Drive was the address linked to the registration. Id. Moon also learned that White "had been associated" with the Tahoe "on multiple different occasions." Id. ¶ 19.
>
> Later in May, Moon set up the second controlled purchase between the source and White. Another detective saw White leave 137 Lullwater Drive and get into the Tahoe. Id. ¶ 21. White and the Tahoe then arrived at the predetermined location for the controlled purchase and sold heroin to the source. Id.
>
> Based on electronic surveillance, Moon learned that in early June 2019, White began frequenting the area of 2460 Confederate Drive in Wilmington. Id. ¶ 22. This location is part of the Forest Hills Apartment Complex. Id. Another

---

[1] On December 1, 2020, the court allowed prior counsel for defendant to withdraw and current counsel entered an appearance. On February 15, 2021, defendant filed a notice of adoption of prior counsel's pretrial motions.

detective contacted the Apartment Complex's management and learned that Donnishia Abraham had recently moved into 2460 Confederate Drive. Id.

The third controlled purchase took place in early June 2019. Id. ¶ 23. A detective saw White drive the Tahoe to 2460 Confederate Drive and go into the apartment. Id. White then drove the Tahoe to a predetermined location and sold heroin to the source. Id.

The fourth controlled purchase took place the week after the third. Id. ¶ 24. Electronic surveillance revealed to Moon that White drove from 2460 Confederate Drive to the predetermined location to conduct the sale. Id.

Based on these facts, Moon asked the judge to issue a warrant allowing him to search both 2460 Confederate Drive and the Tahoe. The judge granted the warrant and the ensuing search turned up heroin, a firearm, a digital scale, and other drug-related materials. Resp. in Opp. at 5, D.E. 49.

(M&R (DE 65) at 1-3).

## COURT'S DISCUSSION

A.  Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B. Analysis

Defendant objects to the magistrate judge's finding that the search warrant for the residence was supported by probable cause, arguing that there is a lack of nexus between the alleged criminal activity and the residence searched.

The Fourth Amendment to the United States Constitution secures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004) (quoting California v. Carney, 471 U.S. 386, 390 (1985)). Additionally, to be valid, a search warrant must "contain a particular description of the place to be searched, and the persons or things to be seized" and "be based upon probable cause, supported by Oath or affirmation." United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994) (citing Dalia v. United States, 441 U.S. 238, 255 (1979)).

"The probable cause standard is not defined by bright lines and rigid boundaries." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992). Rather, "the standard allows a magistrate to review the facts and circumstances as a whole and make a commonsense determination of whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Indeed, "the facts presented to the magistrate need only 'warrant a man of reasonable caution' to believe that evidence of a crime will be found." Id. (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)). This standard "does not demand showing that such a belief be correct or more likely true than false." Id.

4

When reviewing a magistrate's probable cause determination, "[the court's] inquiry is directed to whether the magistrate had a substantial basis for his conclusion that probable cause existed." Id. In conducting this inquiry, "[the court] must accord great deference to the magistrate's assessment of the facts presented to him." United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990). Additionally, "the reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). Importantly, "reviewing courts must resist the temptation to 'invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner.'" Blackwood, 913 F.2d at 142 (quoting Gates, 462 U.S. at 236).

"[A] sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant contains no factual assertions directly linking the items sought to the defendant's residence." United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (quotations omitted). Indeed, "probable cause can be inferred from the circumstances, and a warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993).

Here, there is ample evidence in the record to draw a connection between the alleged drug activity and the residence, including the following. Detective Moon was aware of information received from a documented confidential and reliable source ("SOI-1") that defendant was "selling heroin in Wilmington, NC," and was "driving a blue Chevrolet Tahoe." (DE 64 at 6). SOI-1 conducted a controlled purchase on May 19, 2019, from defendant in the Chevrolet Tahoe. (Id. at 7). SOI-1 conducted a second controlled purchase on May 26, 2019, after defendant left a residence at 137 Lullwater Drive Apt. A, Wilmington, NC. (Id. at 7-8). Then:

> During the week of June 9, 2019, Detective Moon saw through electronic surveillance, [defendant] began to frequent the area of 2460 Confederate Drive

5

Wilmington, NC at the Forrest Hills Apartments complex. [Defendant] stopped frequenting 137 Lullwater Drive Apt. A Wilmington NC. Detective Rummings made contact with management at the Forrest Hills Apartment complex and said that Donnishia Abraham moved in June 8, 2019 at 2460 Confederate Drive Wilmington, NC. . . . . Donnishia Abraham is the registered owner of the vehicle that [defendant] has been operating.

(Id. at 8).

During that same week, SOI-1 conducted a third controlled purchase from within defendant's vehicle. Before that purchase defendant arrived with that vehicle at the residence, entered the front door of the residence, and then came out of that residence. (Id.). The purchase then took place at a "pre-determined location" where SOI-1 entered the vehicle to complete the purchase. (Id.). The Fourth controlled purchase followed a similar pattern, with defendant first driving from the residence to the pre-arranged location to meet SOI-1. (Id. at 10). In sum, this evidence is sufficient to arrive, in a commonsense manner, at the conclusion that defendant used the residence and kept items related to his drug trafficking activities at the residence.

Defendant argues, nonetheless, that the evidence of a nexus is insufficient because defendant had already arrived, and left, the residence on the date of the third controlled purchase before making contact with SOI-1, and the affidavit does not state defendant returned to the residence after the drug transactions with SOI-1. This argument is beside the point. The affidavit need not establish an uninterrupted chain of events linking drugs in a residence to a point of sale with proceeds returning to a residence. As noted, "reviewing courts must resist the temptation to invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." Blackwood, 913 F.2d at 142. "[A] warrant is not invalid for failure to produce direct evidence that the items to be seized will be found at a particular location." United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993). The key facts here are the repeated transactions with SOI-1, defendant's pattern of use of the vehicle, registration of the vehicle to Donnishia Abraham,

observation and location monitoring indicating defendant's presence at the residence, and defendant's presence at and around the residence prior to the third and fourth controlled purchases. Those are sufficient to establish probable cause to search the residence, despite the alleged gaps raised by defendant.

Defendant also asserts that he has a valid North Carolina driver's license that lists his address as 622 Bunting Dr. (Def's Ltr. Obj. (DE 66) at 1). Defendant notes that 622 Bunting Dr. and 2460 Confederate are four blocks apart, and defendant could have been in the area of 2460 Confederate because he stayed at 622 Bunting Dr. (Id.). Defendant further contends SOI-1 gave a different description about defendant's activities from that reported in the affidavit. (Id. at 1-2). As an initial matter, the asserted facts are not proper for consideration in the Fourth Amendment analysis, because "the reviewing court must consider only the information presented to the magistrate who issued the warrant." Wilhelm, 80 F.3d at 118. Here, the affidavit does not present information about defendant's activities at 622 Bunting Dr., nor further description as per SOI-1 (See DE 64 at 6-9). In any event, the information raised by defendant does not undermine the nexus between defendant's activities at the residence as reported in the affidavit and defendant's drug trafficking activities in June 2019, in light of all the circumstances set forth therein. (See id.).

In sum, it reasonably could be inferred from facts set forth in the affidavit that contraband and narcotics would be found at the residence, and the issuing judge had a substantial basis for concluding that probable cause existed.

## CONCLUSION

Based on the foregoing, upon careful review of defendant's objections and the record in this case, the court ADOPTS the M&R (DE 65) and DENIES defendant's motion to suppress. (DE 40).

7

SO ORDERED, this the 3rd day of May, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge